Our final case of the morning is Milhem v. Kijakazi. All right, we have Mr. Mervis, Mr. Forbes. May it please the court, I represent the disability claimant, Ms. Milhem. I plan to talk this morning about the practical impact or the routine of the vocational experts in hearings. Then I also plan to talk about the burden of proof, and then also how past precedents of this court or other courts of equal stature or district courts should be treated. Why don't we start with the third, just to accelerate to that because that's of concern to me. You've got this Weatherby case, which indicates a number of 149,000? Possibly, yeah. And that figure is what I understand to be the last determination with regard to what substantial means, at least with regard to our court. The precedent is unclear. It goes back and forth. There seems to have been this fixation on 1,000 jobs for a while, and there was this confusion with regard to regional versus national. Tell us why Weatherby doesn't control, or if Weatherby does control, why it doesn't apply to your client. When you look at precedent in this area, we're not talking about fixating on a number that establishes a new level that then other courts can look at and say yes. In each case, if it's done properly or the way it should be interpreted is in that case, the government presented evidence. In other words, the commissioner acting as the person fulfilling the burden of proof presented evidence which established the line of significance in that particular case, in that particular time, in relation to that particular economy. So if 30 years ago a judge has a decision that says 25,000 jobs are significant, that's only because the commissioner must have proven that at step five in that particular case, etc. So most of the precedent has to be read that way. It cannot be read in 1990, this court said 25,000, and now in 2022, 25,000 is the number. So if the metric is substantial evidence of a significant number of jobs, and this vocational expert identifies 89,000 as a significant number, as a product of these three groupings, why is that not enough? Well, first off, the vocational expert does not establish the significant number. In fact, the vocational expert handbook specifically says that they're not to do that. So that was what I was going to talk about in hearings. In hearings, I can mostly speak just for the last 15 years, but in hearings, the vocational expert classifies the jobs, classifies the occupations per the Dictionary of Occupational Titles, and then through some methodology, hopefully one that's been approved by this court, has established a national number, and usually that's where it ends. The judge does not, by virtue of standards or questions at all, try to ferret out where the level of significance is, and that's what we're arguing basically here. If they don't do that, if the commissioner through the judge does not develop evidence through questions of the vocational expert or through administrative notice by pointing out specific facts from the acceptable regulatory sources, then there is a total lack of evidence as to what significance is. I'm lost. The vocational expert testified that there were 89,000 jobs available. That's correct. And the ALJ found that that was significant. Well, it's the evidence to support the ALJ's finding of significance. I don't understand what evidence there would be separate from the number of jobs. The number of jobs is the number of jobs in the economy. Right. That the claimant can perform, according to the ALJ. The issue is what is the level of the number of jobs in the economy that rises to significance. That's where it's completely… And the ALJ here found that 89,000 met that. It didn't say why. Much of your brief sounded like you were arguing that there must be a regulation defining how many jobs are significant. Yes. Parallel to the grids. Do you have any support for that position? Because… Do you have any support for that position? That there should be a regulation? Yes. Do you have any support for that position? Yes, because the space… The answer is either yes or no, and then you make a claim. Yes. All right. But it's not by the – well, okay, I guess it's this area of case law. The statute has the word significant. I'm sure you know that the NLR – the Second Circuit once held that the National Labor Relations Board had to proceed by regulation to define unfair labor practices, and it got reversed 9 to nothing by the Supreme Court. Well, we could look at… And then with respect to the Social Security Administration, when it adopted the grid regulations, the justices said they've got a choice. You can proceed by regulation or in the common law fashion. What you're now asking us to hold is that that option of proceeding in the common law fashion went away sometime, and I'm trying to figure out how and where it went away. Actually, I agree with you. If they don't fill the space by regulation, then they need to fill the space through the adjudicated process, and the adjudicated process must have standards. They cannot arbitrarily pick the level of significance out of thin air. That is what the Supreme Court – that's the reason the Supreme Court reversed the Second Circuit. That's what the Second Circuit said in the famous Bell Aerospace case, and the justices said that's not true. They can just pick it out of thin air? You can do it case by case. Okay, case by case with standards that can be reviewed if all we have… We kind of know what it is, and this isn't it. I'm not a labor lawyer. I know you are. But I am a utility lawyer. I am a utility lawyer. Counsel, you are making the very same argument that the Second Circuit accepted in Bell Aerospace in which the justices rejected. In the utility area. Why is it different now? I'm about to tell you. Because in the utility area, the standard is just and reasonable. That's how the rate has to be. Counsel, labor law is not the utility area. But utility area will support my position, so that means that in one agency the way it is doesn't necessarily mean it's applying to the other agency. Just and reasonable is not defined. That space has been regulatorily and through adjudicative tradition defined. What I am saying here is it's not regulatorily defined, and the adjudicated tradition is completely absent, and no evidence is supplied to fill the gap between the finding of what the number of jobs is in the economy per occupation and the finding of the level of significance. There's no evidence there. And that's the gist of our argument. I'll reserve the rest of the time. Thank you, Your Honor. You have 22 seconds. Mr. Mervis. Good afternoon. May it please the Court. David Mervis on behalf of the Commissioner of Social Security. I'm happy to talk about the substance, but I'd like to start with the problem here from our perspective, is that Ms. Millum presents one argument on appeal, and that argument isn't properly before the Court. In any event, it has no merit, and I'm obviously happy to talk about that. But I do want to spend a moment or two just briefly at the outset noting that, of course, Ms. Millum at the administrative level didn't ask anything of her counsel. She was represented by counsel. Didn't ask anything of the vocational expert to explore any of the issues that might be relevant here. Then in the district court, she presented a different argument than the one she presents to this court. In the district court, she argued that the number involved here, 89,000, is too small, and she offered her theory as to why. In this court, though, she has changed position, or she's changed the tack, and she's argued that we can't know whether the number is too small. So 89,000 may or may not be too small, depending on— Mr. Mervis, I don't know whether that box is on your end or our end, but you have been obscured by a box requiring someone to press an okay button. My apologies, Your Honor. I don't see a box. Well, we alas see a box. Take the remote there and hit okay. Thank you. It's been pressed. Okay, you're back live. Excellent, excellent. Thank you. So that's our position. I mean, this court, of course, operates as one tier in the review process. That's from this court just recently in Jeske. And so this court doesn't have the benefit of the district court's analysis on this particular point, this question of whether a reviewing court can review the question of significance without some additional definition. So for that reason, we'd argue that this court needn't go any further and deal with the matter that way. But, of course, the commissioner doesn't rely solely on waiver or on forfeiture from the hearing level. So what Ms. Millam has argued here is that an additional definition of the word significant is somehow necessary for a reviewing court. And there's a couple of reasons why the commissioner disagrees. As this court is certainly aware, this court has and its sister circuits have repeatedly and recently reviewed this question of significance, all under the same regulatory scheme, statutory and regulatory scheme that is at issue in this case. So Ms. Millam doesn't explain why those courts, this court and other cases recently, as recently as Ducharme last month, which was decided after our briefing was complete, but we submitted a supplemental authority letter about, or motes, which is the case from the Sixth Circuit, again, in our supplemental authority letter, both rejecting this same argument and in fact doing what Ms. Millam argues is impossible, which is to review the question of significance. So, of course, what this court, what the administrative law judge does is accepts testimony from a vocational expert and then makes this finding. That finding is that there are significant jobs in the national economy that Ms. Millam can perform. This court is, we're at, of course, 89,000 jobs, which is well above what this court has recently and repeatedly held to be significant. So just recently in Ducharme, the number was 31. In Mitchell, before that, the number was 30. In Weatherby, as your Honor, Judge Brennan pointed out, it was higher. It was 140. We're at 90 or almost 90,000. So we're well above what this court has recently found or held to be significant and in the same vein as what Weatherby held in, I guess it was 2011. Mr. Mervis, when under the applicable regulation does an ALJ not properly exercise discretion when setting this significance number? Well, of course, that's an assessment that this court would make in reviewing that finding for substantial evidence. I mean, I think the answer is this court can and is charged with reviewing that finding. So if there is reason to undermine the evidentiary basis for the finding, then this court may well hold that it's not supported. It's not simply unreviewable. But, of course, we don't have any basis in this case to question the factual basis or the elements that would go into this assessment. So in Ducharme, this court, Judge Easterbrook, on the panel mentioned the example of a coffee grower. So if there are jobs identified that might suggest they're isolated in certain areas, well, that might be a reason to hold that the ALJ's finding isn't supported by substantial evidence. There's no evidence of that here, partly because of the jobs that were identified, the occupations that were identified, and partly because Ms. Millam's counsel didn't ask any questions to explore this issue. At the hearing. So what the administrative law judge finds is reviewable, but there's simply no basis on this record to conclude that it's unsupported. Judge Easterbrook brought up the point of the so-called grids, and I think they're actually instructive here for another reason, and we've pointed this out in our brief. Ms. Millam doesn't explain why somehow an additional definition of the word significant is needed for this court to review the finding that the ALJ makes in Step 5 in a vocational expert case as compared to the finding that an administrative law judge makes in a Step 5 grid case. Both assessments are that there – excuse me, both findings are that there are significant numbers of jobs in the national economy because that's what the regulation requires and that's what the statute requires. But in both cases, there's no definition of the word significant, no further definition. We've pointed out that, in fact, what the commissioner has done by regulation is to pick up language from the congressional record. So isolated jobs specifically is the term that the commissioner includes in the regulation at 404-1566 and that shows up in the congressional record. We've cited the Walker Ninth Circuit case, Walker v. Matthews from 1976, that discusses the fact that just a few years prior, the Congress had discussed what it meant by work which exists in the national economy and what it meant was significant numbers of jobs and what it meant was not isolated jobs. The grids, thinking about the grids, grids are now 40 years old and what jobs the national economy offers changes as the economy changes. Have the grids been revised in light of those changes? Not in light of those changes, Your Honor. Not with respect to – Of course, I won't ask the terrible, embarrassing question, will the Department of Labor ever update the Dictionary of Occupational Safety? If you won't ask it, Your Honor, I won't answer it. I didn't ask it. It stands unasked. But again, the point here is this is a safeguard at the last step of the sequential evaluation. The commissioner absolutely bears the burden at that step and the commissioner meets that burden by, in some cases, asking a vocational expert for testimony as to a number and in some cases by administrative notice by virtue of the grid. So the commissioner explains that she's taken administrative notice of the existence of jobs in the national economy at various levels that would correspond to a grid rule. So, too, the ALJ through the commissioner asks the vocational expert for input as to the availability of work. The ALJ makes that finding and this court, of course, is able to review that finding for substantial evidence just as it has in innumerable cases recently. So for those reasons, we'd ask that this court affirm the decision of the district court in this case. Okay. Thank you. Thank you. Mr. Forbes, you have 22 seconds. I will round it up to 30. Thank you, Your Honor. A vocational expert is not the administrative law judge, is not the commissioner of Social Security. They have the burden of proof. Unless we are going to continue an arbitrary regime where the vocational expert's numbers automatically qualify as significant, then something needs to be done. The grid space is regulated. The non-grid space, the exertion plus non-exertional level is not. If adjudicated standards are what is needed, then let's have them. Who should supply those standards and who has a burden of proof? The other side does. The case is taken under advisement and the court will be in recess.